IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION


MATTHEW SCIABUCUCHI, on behalf    :
of himself and all others         :
similarly situated                :
                                  :
        vs.                       :
                                  :
SOUTHCOAST FINANCIAL CORPORATION, :
et al.                            :     2:15 CV 4352









        Motion hearing in the above-captioned matter held

Tuesday, January 26th, 2016, commencing at 1:30 p.m.,

before the Honorable David C. Norton, in Courtroom II,

United States Courthouse, 81 Meeting St., Charleston,

South Carolina, 29401.










        REPORTED BY DEBRA LEE POTOCKI, RMR, RDR, CRR
       Official Court Reporter for the U.S. District Court
                        P.O. Box 835
                   Charleston, SC  29402
                      843/723-2208

1                      A P P E A R A N C E S

2


3    GRUENLOH LAW FIRM
          By:   William M. Gruenloh, Esq.
4               192 East Bay Street, Suite 202
                Charleston, SC  29401
5         Appeared for plaintiffs.


6

     RIGRODSKY AND LONG
7         By:   Brian D. Long, Esq.
                2 Righter Parkway, Suite 120
8               Wilmington, DE  19803
          Appeared for plaintiffs.

9


10   HAYNSWORTH SINKLER BOYD
          By:   Robert Y. Knowlton, Esq.
11              Elizabeth H. Black, Esq.
                P.O. Box 11889
12              Columbia, SC  29211
          Appeared for SouthCoast Financial.

13


14   TROUTMAN SANDERS
          By:   James T. Mast, Esq.
15              Mary M. Weeks, Esq.
                600 Peachtree Street NE
16              Atlanta, GA  30308
          Appeared for BNC Bancorp.

17


18   ROSEN ROSEN AND HAGOOD
          By:   Richard S. Rosen, Esq.
19              P.O. Box 893
                Charleston, SC  29402
20        Appeared for BNC Bancorp.

21


22


23


24


25

1          THE COURT:  I'm ready when y'all are.

2          MR. GRUENLOH:  Your Honor, Mike Gruenloh for the

3   plaintiffs.  First, I want to thank the Court for making time

4   for us in your schedule at such short notice.  Along with me

5   to argue the plaintiffs' motion for preliminary injunction is

6   Brian Long, who the Court has admitted pro hac vice.

7          MR. LONG:  Good afternoon, Your Honor.

8          THE COURT:  Welcome.

9      Yes, sir.

10          MR. KNOWLTON:  Your Honor, Bob Knowlton for the

11   Southcoast defendants.

12      One issue I would like to mention to you before we get

13   started is -- and I don't know if we need to bring up

14   confidentiality issues today.  I don't think I was really

15   going to broach anything that's confidential, but I thought I

16   would broach the subject now.  I don't think I need to bring

17   anything up confidential in my remarks, but we do have

18   confidential material in the record for this motion.

19          THE COURT:  Okay.  Well, it's a public courtroom, but

20   I don't see anybody here really not beating down the door to

21   hear this hearing, so I don't think there's going to be any

22   breach of any confidentiality while we're here.  Do you

23   anticipate any, Mr. Long?

24          MR. LONG:  There may be one or two small things, but

25   I think I can structure the argument in such a way that we can

4

1  try to protect as much confidential information as possible.

2           THE COURT:  Okay.

3      Yes, sir?

4           MR. MAST:  Tim Mast for the BNC defendants, Your

5  Honor.

6           THE COURT:  All right.  Welcome, Mr. Mast.

7           MR. MAST:  Thank you.

8           MR. GRUENLOH:  Your Honor, I don't mean to step on

9  Mr. Long, but we did deliver a number of packages to your

10  office, our initial brief and our reply brief, because they

11  did contain confidential information.  I have copies of those,

12  just in case they didn't find their way to you.

13           THE COURT:  I think we have everything.  Yeah, I

14  think we received everything.  Now, I can't promise you that

15  we read everything, but I promise you we read the briefs.

16  Now, the attachments and the transcripts and all that kind of

17  stuff, we probably didn't, all right?

18      Okay.  Mr. Long, I'm ready.

19           MR. LONG:  Thank you, Your Honor.  May it please the

20  Court, Brian Long from Rigrodsky and Long from Delaware, on

21  behalf of plaintiff Matthew Sciabucuchi.  This is the time set

22  down for consideration of plaintiffs' motion for a limited

23  preliminary injunction or temporary restraining order.

24      At the outset, I just want to make clear that what we are

25  seeking, we believe to be relief that is extremely limited in

1    scope.  All we're really asking for is the Court to the order

2    defendants to require -- to disclose a very discrete set of

3    information.  And we'd like also for the Court to order a very

4    brief, perhaps seven-day adjournment of the special meeting of

5    Southcoast Financial that's currently scheduled for this

6    Friday, January 29th, 2016.

7            THE COURT:  Mr. Long, if lightning were to strike and

8    the defendants decided to do the press release and file that

9    form this afternoon, why would we have to continue the

10   hearing -- the meeting?

11           MR. LONG:  We wouldn't.

12           THE COURT:  Okay.  All right.

13           MR. LONG:  We wouldn't.  No.  Thank you.

14       So a lot was made of what we were trying accomplish here

15   today, but I want to make clear we're not trying to derail

16   this transaction.  We're not trying to permanently stop the

17   transaction.  We're not permanently trying to stop the

18   stockholder meeting, and we're not trying to cause any harm or

19   great expense to Southcoast or its stockholders, or BNC, the

20   buyer, for that matter.  What we are seeking is limited

21   injunctive relief, which we respectfully submit is appropriate

22   under these circumstances.

23       In assessing our request, the Court has, as Your Honor's

24   aware, four factors it has to consider, first being the

25   likelihood of success on the merits, the second being the

1    threat of irreparable harm, the third being a balancing of the

2    equities, and the fourth being the public interest.  We

3    believe that we satisfy each of these criteria.

4        With respect to likelihood of success on the merits, we do

5    believe that we will prevail on at least some of our

6    disclosure claims.  At the outset, I would like to sort of

7    modify and peel back a little bit from what I'm asking for.

8        One of the disclosures that we were seeking, and I'm no

9    longer going to be asking the Court to order defendants to do,

10   relates to the financial forecasts that were provided, or

11   partially provided in the definitive proxy.

12       In preparing for the argument today, I noticed that, in

13   fact, some of the information that we wanted, was disclosed,

14   and so I apologize for the mistake, Your Honor.  It wasn't

15   where the information normally would have been, but it was set

16   back further in the papers.  And so with respect to those

17   financial forecasts for Southcoast, we're no longer asking the

18   Court to order those.

19            THE COURT:  You mean that's the 2018 forecast?

20            MR. LONG:  2018 forecast.

21            THE COURT:  Which was prepared by the investment

22   bankers.

23            MR. LONG:  Correct.

24            THE COURT:  Gotcha.

25            MR. LONG:  So jumping straight to it, there are

1    disclosures that we are asking the Court to order the

2    defendants to make.  And the primary disclosure that we

3    believe is warranted, appropriate and necessary under the

4    circumstances, relates to a conflict of interest, or shall I

5    say potential conflict of interest pertaining to Southcoast's

6    financial adviser, Banks Street Partners.

7        We believe that the true extent and nature of the

8    relationship between Banks Street and BNC must be disclosed.

9    The record's clear that BNC has a far -- Banks Street, rather,

10   has a far more significant relationship with BNC than

11   Southcoast.

12       I'm not saying that that relationship, in and of itself,

13   should disqualify Banks Street as a financial adviser, what

14   I'm saying is that the potential conflict needs to be

15   disclosed, and the potential conflict is this.  The record

16   indicates that over the past two plus years, Banks Street has

17   performed at least five, if not six engagements for BNC, for

18   which it has received in excess of $1.625 million.  Or

19   actually $1.625 million.  And that's reflected in the

20   affidavit of Mr. Spencer, the CFO of BNC, that BNC submitted

21   with the Court.

22       Defendants argue, in opposition to our request, saying,

23   among other things, that the information's already disclosed.

24   And there is a reference in the proxy to the effect that, in

25   fact, BNC did engage -- or BNC did engage Banks Street, and

1    Banks Street provided services.

2        There's no quantification, there's no explication of

3    exactly what those services were.  Now, this is important for

4    a variety of reasons.  First, as I said, Banks Street has

5    received eight times more in fees from BNC over the relevant

6    period, as opposed to what is received from Southcoast for the

7    single engagement.  It's important here, because the

8    definitive proxy reflects that Banks Street's service to the

9    board was, for multiple reasons, something that the board

10   relied on, and for multiple reasons that the board based its

11   suggestion -- or its decision to approve the merger.

12       Banks Street was the financial adviser that went out into

13   the market and conducted a market check.  Banks Street was the

14   financial adviser that identified potential acquirers.  Banks

15   Street was the financial adviser that ran the process, to the

16   extent that the process had multiple steps, it's the one that

17   collected the final bids, and Banks Street's the one that --

18   the financing adviser that provided the fairness opinion to

19   Southcoast.

20       We think that in light of that significant role that Banks

21   Street played, in light of the significant relationship that

22   BNC has with Banks Street, that information must be disclosed.

23   And we set forth cases in our papers saying that these sorts

24   of potential conflicts are things that need to be disclosed,

25   these are the sorts of things that a shareholder would want to

1    know, these are the sorts of things that alter to the total

2    mix of information that a stockholder would be interested in

3    deciding.

4        It's not necessarily the case, and I don't believe it

5    needs to be, Your Honor, that this information would cause the

6    shareholders to revoke their proxies and vote against the

7    deal.  It's just that you have a financial adviser with a

8    significant relationship with the buyer, and that's really

9    only partially disclosed.

10       So call it a nondisclosure, call it a partial disclosure,

11   but I think if you look at the record, if you look at the

12   definitive proxy, there is a tacit recognition on the part of

13   the defendants that something had to be disclosed about the

14   relationship between BNC and Banks Street.  And not enough has

15   been disclosed and we believe more should be disclosed.

16           THE COURT:  I guess you could call it immaterial, if

17   you were a defendant.

18           MR. LONG:  They would call it immaterial.  They have

19   called it immaterial.  I don't believe -- and I do believe,

20   Your Honor, that is the disclosure I really would like to

21   highlight.

22       I think it ties in to one of the other disclosures we're

23   seeking with respect to the disclosures regarding the process.

24   We've asked the Court to cause the defendants to disclose each

25   of the indications of interest that were received during the

1    process.  But what we're really interested in, Your Honor,

2    what we really would like disclosed is the indications of

3    interest from Party A, all right?  Just Party A.  Now, Party A

4    was the entity that came in and had a bid at about the same

5    level as BNC in the initial stage of the proceedings.  All

6    right?  And Party A was the other --

7            THE COURT:  That's the ten percent cash, $700,000

8    difference?

9            MR. LONG:  Well, in the end, yeah, right.  But --

10   Right, in the end, that's correct.  So -- but part of the

11   problem tying in with the conflict, or potential conflict, is

12   that, I don't know, it just seems suspicious to me that BNC

13   was able to come in 10 cents higher in terms of their final

14   bid than Party A.  And, you know, I wonder what, if any, role

15   the relationship that BNC had with Banks Street, and what it

16   played into there.  And that's why, again, I think it's

17   important that the conflict disclosure's made.

18       With respect to the financial forecasts, I've already said

19   that that is not something that we're looking for.

20       The other disclosure that we're focusing on with respect

21   to the papers, are the financial analyses that Banks Street

22   performed that are not disclosed.  And this is a partial

23   disclosure, I think, Your Honor.  They're analyses that the

24   banker did, that the board relied on.  They're related to BNC.

25   They don't even -- the defendants don't even disclose the fact

1    of these analyses in the definitive proxy, let alone what they

2    say, what they reflect, what the valuation conclusions were,

3    to the extent they had valuation conclusions.  I just think

4    it's something that needs to be disclosed to round out what's

5    already a partial disclosure.  So those are the disclosures in

6    terms of materiality.

7        In terms of irreparable harm, I think our papers are

8    pretty clear.  It's our position the cases say repeatedly that

9    the inability to cast a fully informed vote constitutes

10   irreparable harm.  All we're asking for, again, is some

11   additional information.  I don't know that it's going to cause

12   the deal to be scuttled.  I don't think that it will, to be

13   candid.  But the notion of shareholder franchise is very

14   important, and I think it needs to be recognized that once the

15   transaction's approved, if it is approved, and right now it

16   looks like it will be approved, there will never be a chance

17   to undo things and have a fully informed vote.  So that's the

18   irreparable harm prong.

19       With respect to a balancing of the equities, again, in

20   our --

21           THE COURT:  I guess if they can't undo it, they can

22   always pay damages.

23           MR. LONG:  Well, I don't think that damages are

24   really available.  I mean, this is an equitable thing that

25   we're looking at.  You know, I'll be candid, Your Honor,

1    standing here, I'm not sure exactly what kind of damages one

2    would have flowing from a state law fiduciary disclosure

3    claim.

4         Now, if this were a case where we were trying to stop the

5    deal for some sort of process or price issue, then yes.  But I

6    wouldn't be here seeking injunctive relief, if that were the

7    case, because I know to the extent I can get over a motion to

8    dismiss, I can come back and ask Your Honor, you know, to

9    award damages.  So that's not what we're seeking to do here.

10        In terms of the balancing of the equities, you know, we

11   believe that the balance tips in favor of plaintiffs.  Again,

12   we're not asking for anything more than a very short filing

13   with the SEC on DEF 14A.  As we said in our papers, this is

14   something that's been done before.  We don't feel that there

15   has to be some sort of long drawn out process.  These

16   disclosures could be made today or tomorrow.  If we push the

17   meeting back a week, that would be ten days.  Under the Art

18   Technology case that we relied on in our papers, that was the

19   same amount of time that the judge in that case ordered for

20   additional disclosures.

21        THE COURT:  I thought you told me earlier if they did

22   it today or tomorrow, they could still have their meeting on

23   Friday.

24        MR. LONG:  They could.  I mean, that's up to Your

25   Honor's discretion.  I'm just sort of trying to proceed in an

abundance of caution.  Obviously a little bit more time to

consider these disclosures, a little bit more time to, you

know, decide whether to revoke a proxy or not is beneficial.

I mean, if Your Honor thinks that, you know, we could make

these disclosures today and not move the meeting, you know,

who is it for me to argue.

     And so, you know, to the extent that, you know, the

meeting's only moved briefly or not at all, I don't think any

of the doom and gloom that defendants prognosticate, will come

to fruition.  That the meeting has an outside -- the

transaction has an outside close date of March 31st, 2016.  So

the contemplated that this could take a little bit further.

They don't have to preprint the proxy, they're not going

reaudit their financial statements.  They're really not going

to have to incur much expense at all, if the Court orders the

summary of the disclosures.

     And with respect to the public interest, I rely on our

papers for that, but --

               THE COURT:  Great.  Thanks, Mr. Long.

               MR. LONG:  Thanks.

               MR. KNOWLTON:  May it please the Court, Bob Knowlton

on behalf of the Southcoast defendants, Your Honor.  Also with

me today is Elizabeth Black, my partner.  And Mr. Wayne

Pearson, the CEO, is here, along with Ben Seabrook, who is the

chief operating officer of the bank.

1      Your Honor, before you today is a motion by the, as you

2   know, the owner of 100 shares of Southcoast, which is

3   .0014 percent, and he is seeking to enjoin the vote for a deal

4   that's worth almost $100 million.  He has only asserted claims

5   based on South Carolina law.  That's important to note, that

6   we are not in Delaware anymore.

7      The sole basis for his motion for preliminary injunction,

8   which is different from his complaint, his amended complaint,

9   and is really mostly in the complaint that's not part of the

10   case yet, has been sort of a moving target, are what were

11   four, I guess now three different disclosure claims.

12      He suggests that although the proxy is 81 pages long with

13   57 pages of attachments, and refers to voluminous public

14   information, that he wants some more details.

15      And it also goes to the irreparable harm concept.  When

16   you seek an equitable remedy, you must act with haste and

17   dispatch, and he has certainly failed to do that, waiting two

18   weeks before this meeting is scheduled to file this motion,

19   with everybody's schedule being ripped out of the frame to

20   deal with this on an expedited basis.

21      Further, there is no showing that this man represents the

22   interests of the other shareholders.  He owns 100 shares.  In

23   contrast, we've submitted the affidavit of Manuel Cohen, who

24   owns over half a million shares, and he says, I don't want

25   that information, I don't need it, it would harm the

1    shareholders not to be allowed to go forward with the vote.

2    He does not represent his interests.

3        Plaintiff simply offers no evidence that he does represent

4    the interests of other shareholders.  And I think that's

5    relevant for the consideration of the balance of harm that

6    you're looking at here.  He represents himself, and he doesn't

7    even bother to submit an affidavit?  He doesn't come here for

8    this hearing?  He's trying to enjoin a vote on $100 million

9    transaction.

10        The recent shareholder votes also reflect that the

11    shareholders support management's recent actions, by the

12    re-election of the board members and by the approval of

13    executive comp at the annual meeting that just took place in

14    December.

15        And I can provide you, Your Honor, as we've briefed, the

16    proxies are out.  They went out in December, and they're

17    receiving them back.  And as of this morning, total votes cast

18    are 5,533,377 shares.  Of those voting, 5,464,176 have

19    indicated in their instructions and in their proxy, to vote in

20    favor of the transaction.  And that is an approval rate of

21    98.75 percent.  And that is 76.92 percent of the outstanding

22    shares, far in excess of the threshold needed for approval of

23    this transaction.

24        This plaintiff has indicated in his complaint that he's

25    opposed to the transaction because it wasn't enough money, or

1    something along those lines.  Well, he's one of the

2    1.25 percent that hasn't approved.  So he certainly stands in

3    contrast to the majority of the shareholders, and can't be

4    said to represent their interests.

5        It's also, I think, important to note here, Your Honor,

6    that the SEC has reviewed this proxy.  The SEC is all about

7    disclosure.  They didn't suggest any of these disclosures

8    needed to be made.  In fact, in the proxies are reference to

9    this lawsuit.  I think it's rather presumptuous for

10   Mr. Sciabucuchi to suggest that he knows more than the SEC

11   does, and that this information is so important that it

12   warrants an injunction here.

13       And as you mentioned earlier, there is a cause of action

14   recognized for under Rule 14(a)(9) -- I suppose you could

15   bring one under this statute, South Carolina statute -- for

16   damages for failure to make appropriate disclosures.  That's a

17   recognized cause of action under the Federal Rules,

18   Rule 14(a)(9).

19       The law in the Fourth Circuit and elsewhere is clear with

20   regard to a preliminary injunction.  It is an extraordinary

21   remedy.  It's not lightly given.  And it is to be applied only

22   in the limited circumstances which clearly demand it.  And the

23   courts recently made abundantly clear that a clear showing

24   must be made of irreparable harm, absent relief, and that he

25   is likely to succeed on the merits.  And no matter how likely

1    the irreparable injury, absent an injunction, there is -- it's

2    not appropriate unless he also demonstrates a clear likelihood

3    of success on the merits, and the balance of equities favor

4    him, and the injunction is in the public interest.  You have

5    to clear every one of those hurdles with a clear showing.  And

6    we submit that he hasn't cleared any of those hurdles.

7         Even in Delaware, and I will distinguish Delaware, but

8    even in Delaware, the courts are loath to enjoin a shareholder

9    vote when there's no other competing bidder out there to offer

10   a topping bid.  That is the situation here.

11        We went through an extensive process, the Southcoast board

12   did, many months long.  And as Mr. Pearson's affidavit makes

13   clear, there's no reason to think there's going to be somebody

14   else waiting in the wings at this point.  It's very

15   speculative as to whether you could go through this process

16   again and get this sort of result.  Despite modest deal

17   protection measures, nobody else has come forward with a

18   topping bid.  And that is considered extremely important, even

19   in Delaware, before -- and it's rare.  I'm not even sure I

20   could tell you a case where they did it when those are the

21   facts.

22        Now, I want to take a moment to talk about the standard

23   for disclosures.  Because we have a strong disagreement with

24   the plaintiff about the standard for disclosures here.  South

25   Carolina has two statutes that I think are relevant.  One

1    statute makes mandatory certain disclosure.  And that is

2    Section 33-11-103(d).  None of the mandatory disclosures are

3    at issue here.  They don't submit that we failed to make those

4    mandatory disclosures.

5        There's another statute we mentioned that deals with what

6    has to be in a meeting notice.  They don't complain about

7    that.

8        It really boils down to what they claim is prohibited

9    under South Carolina law, and that is spelled out in a

10   statute.  This isn't judge-made law in Delaware, which I think

11   is where Delaware has drifted off into now has created quite a

12   mess that they're now trying to reel back in.  South Carolina

13   has a statute, and that is 33-7-220.  And under that statute,

14   it prohibits three different types of statements in a proxy.

15   False statements with regard to a material fact, misleading

16   statements with regard to a material fact, and statements made

17   that omit to state a material fact necessary to make the

18   statements that you did make, not false or misleading.

19       The only word plaintiff teases out of that whole thing is

20   the word "material."  That's not the entire test.  You have to

21   show a false statement, you have to show a misleading

22   statement, or that you said something that is misleading

23   unless you say something else.  And I submit they have utterly

24   failed to make a showing with regard to that test.

25       Now, under Rule 14(a)(9), federal law has addressed the

1    materiality standard, and it's similar to 10(b)(5).  But under

2    the TSC case, the Court has articulated the standard for the

3    word materiality.  And that is, is there a substantial

4    likelihood that a reasonable investor would consider the

5    information important in deciding how to vote.  Is there a

6    substantial likelihood that a reasonable shareholder would

7    consider the information important in deciding how to vote.

8        Now, I would like to hand up, Your Honor -- I apologize

9    for the volume of recent cases -- but I've handed you three

10   cases, Your Honor, one out of the Second Circuit, one out of

11   Minnesota and one out of Indiana, and they're all very clear.

12   And that is, under Rule 14(a)(9), it's not enough to show

13   materiality.  You've got to show exactly what the statute

14   says.  Rule 14(a)(9) has very similar language.  You've got to

15   show a false statement, a misleading statement, or a statement

16   that was made that is misleading unless you say something else

17   to make it clearer.

18       And I submit that if you can read South Carolina law to

19   embrace the federal standard, it's not much different.  But

20   certainly -- and as articulated in these federal cases.  But

21   it is different from Delaware law.  If Delaware law can be

22   read to say, oh, you have to disclose all material

23   information, that's untethered with -- then you're just sort

24   left drifting with an ad hoc decision from time to time.

25   Well, I think they might want to know that, that's material.

1    And there's just no cohesive form to it.  Unlike a statute or

2    regulation that has all of the notice and comment and vetting

3    process, these ad hoc decisions about what is material and

4    what is not, need to be tethered.  In South Carolina they are

5    tethered to this statute.  And so we're not free to write that

6    critical part of the statute out.

7        And, Your Honor, under this standard, the -- what is

8    material is contextual, in part.  And additional confirming

9    details aren't relevant.  They're not material.  If there are

10   a million reasons why you should vote in favor of something,

11   and said, oh, yeah, by the way, he's good looking, too, or

12   something that's maybe interesting, might be an additional

13   confirming detail, but it's not material in that context.

14   Something that tends to make you vote against this

15   transaction, something negative would be more material in this

16   context.

17       And so when we're looking at this information, I think

18   materiality needs to be judged in that context.  And, Your

19   Honor, I'd like to also hand up another case.  It is long, but

20   I think you'll find it interesting reading.

21           THE COURT:  Oh boy.

22           MR. KNOWLTON:  This is a case that was issued by --

23           THE COURT:  So we can read it responsibly?

24           MR. KNOWLTON:  Your Honor, this is a case that was

25   handed down on Friday by Chancellor Bouchard in the Delaware

1    Court of Chancery, involved the same plaintiff that you have

2    in this courtroom, and one of the same Delaware lawyers in the

3    courtroom.  And this judge talks -- this reads a whole lot

4    like our motion to dismiss.  It talks about the mess that

5    Delaware has created by drifting off without looking at what

6    really is material, what the shareholders really care about.

7    And these trivial additional confirming details are not what

8    the Court should be enjoining transactions about.

9        And, Your Honor, in a securities fraud case, for example,

10   evidence will be submitted to you in the form of event studies

11   with expert reports and things of that nature.  Here, there's

12   no evidence demonstrating that a shareholder is likely to

13   consider any of this information material.  In that decision,

14   and we mentioned it in our motion to dismiss, there has been

15   some analysis done about some of this trivial detail has not

16   been considered important, has not changed shareholders' votes

17   on an experimental analytical basis.

18       And, you know, Mr. Sciabucuchi has certainly not

19   demonstrated, he's not presented you any evidence that a

20   shareholder would consider this important.

21       Let me turn to the specific disclosures at issue.  There

22   were two types of financial projections, both the BNC and the

23   Southcoast.  Are those both out?

24             MR. LONG:  Yeah.

25             MR. KNOWLTON:  So I can skip that.

1    Now let me turn to the Banks Street's so-called conflict

2    of interest.  As mentioned, the proxy discloses, at page 43,

3    that Banks Street has provided advisory services to BNC during

4    the prior two years, for which it received compensation.  That

5    is a true statement.  There is no allegation that it's not

6    true.  There is no allegation that that -- actually, he does

7    argue -- that's where the standard comes in.  He argues that

8    that is misleading.  That's a true statement.  There's nothing

9    misleading about it.  He has to put his own spin on it to say

10   that it is misleading.

11   There's no affirmative duty to disclose any additional

12   details.  He just decides that's something else he thinks the

13   shareholders would like to know.  Well, there's no evidentiary

14   proof that a reasonable shareholder would consider that

15   important.

16   There is -- he has also demonstrated -- he's attached

17   public documents reflecting this information.  And BNC has

18   pointed out, and also in their reply in the motion to dismiss,

19   that a lot of this information is in BNC AKs.  Obviously you

20   can't reveal a transaction that's being negotiated, you can't

21   say we're getting ready to merge with ACME, but, you know,

22   once the deal is announced, it is very public.  These

23   investment banking firms are very proud to announce every deal

24   they get involved with.  So they announce it.  AKs announce it

25   in a public company filing for both the target and the

1    acquiring bank.  And all of that publicly-available

2    information is, in fact, public, and everything they've done

3    for BNC that is public, is part of the filing.

4        And so as plaintiff has demonstrated, it's reasonably

5    available, nothing that has been said in the proxy is untrue,

6    and a curious plaintiff could easily find this information

7    out.

8        And as we have submitted in affidavit testimony, no other

9    shareholder's asking about any of this information.  They

10   don't need this.  This is the only plaintiff who has asked to

11   participate in this lawsuit.  And not a single shareholder has

12   asked Southcoast for this type of information.  It is, in

13   fact, publicly available, and it doesn't need to be further

14   disclosed.  And it's not a conflict of interest.

15       The fact that these investment banking firms -- there are

16   not that many of them in the Southeast that handle bank

17   mergers.  And as Mr. Pearson points out in his affidavit, when

18   they started out the process, when they interviewed 28 -- or

19   solicited 28 different financial institutions for interest,

20   they knew that BNC -- that Banks Street was doing work for

21   some of those institutions, and they had no idea who the

22   successful bidder would ultimately be.

23       They went through this rigorous process, and narrowed it

24   down to 16, and then so on, until they ended up with a winner.

25   And I think that is important as well, because these other

1    transactions that plaintiff points to are unrelated deals.

2    They have no impact on the analysis that they would have done

3    here.  But more importantly -- to me, more importantly is the

4    practical fact that the fairness opinion here is sort of

5    window dressing.  It's really just not that important.  And I

6    was sort of thinking through it.  If you had a relative who

7    died, you said, I want to buy the house.  So you go to your

8    other relatives and say, okay, I want to buy the house.  So,

9    okay, let's get an appraisal.  And that's all you look at is

10   the appraisal.  The appraisal's important in that context.

11   But if you decide to sell your house, and it's on the market

12   for six months, you get traffic, you get multiple proposals

13   and you go through this rigorous process, maybe it's subject

14   to an appraisal before the bank will make the loan, but that's

15   just far less important to you in making your decision, than

16   the process that you went through.  And here, this bank went

17   through a very rigorous process.  I've dealt with a number of

18   bank mergers, and I've not seen a process as rigorous before.

19   A lot of times it will be, you know, the presidents of two

20   banks might know each other and say if you ever decide to

21   sell, give me a call, and they'll kind of latch in on a key

22   bidder, a likely bidder, early on.  But here, they went

23   through an auction process essentially.  And so the process is

24   a whole lot more important here than the details or the

25   fairness opinion.

1        And, Your Honor, we also point out that in the rare cases

2    in Delaware, where they have required disclosures of more

3    details of an investment banker's involvement with the other

4    side of the deal, that involvement has been extensive.  And

5    we've briefed that in our cases.  It deals with loans and

6    equity interests and all sort of things on the other side of

7    the transaction where there is a conflict.  Here, there is not

8    that sort of conflict.

9        And so even if you were in Delaware, this would not be a

10   case that even historically would have warranted any

11   affirmative relief.  The standard is different in South

12   Carolina, and they certainly haven't demonstrated that it is

13   material.  And there's simply no showing that there's a

14   practical need for any shareholder to have this information.

15   And this plaintiff has the information, so he certainly

16   doesn't need it.

17       And, Your Honor, let me turn to the financial analysis

18   that plaintiff has complained about.  Plaintiff has suggested

19   that the shareholders need more information about some of the

20   financial analysts' calculations.  They already are disclosed

21   in mind-numbing detail on pages 38 to 47.  Even if you're

22   required to prepare a summary, that's at least a summary.

23   There is no requirement for further disclosure.  There's no

24   requirement for disclosure under South Carolina law, for sure.

25   They don't cite a single South Carolina statute or case.  And

1    even if you could say there's a duty to disclose a summary of

2    what he did, that's there.  They don't allege that anything

3    that was disclosed was false, they don't allege anything that

4    was alleged is misleading, and they don't allege that what was

5    disclosed warrants other information to be disclosed to keep

6    it from being misleading.

7        And I can imagine a scenario where, let's say an analyst

8    prepared calculations, some of which made you look real bad,

9    some of which was real rosy, and you just picked the real rosy

10   ones, you might have a point.  But they don't even make that

11   argument.  They say, well, you know, I'd like to have a few

12   more calculations.  That's simply not the law.

13       You know, if that was the law, you may as well put the

14   whole book in there each time, because there's no safety,

15   because the plaintiff can always say, well, there's a number

16   here you didn't include.  And they've got to show materiality.

17       In addition, they've got to show the rest of the test.

18   Additional confirming details doesn't cut it.  Information --

19   they do not even allege it's false, misleading, that type of

20   information.  So they are true statements.

21       There is also an attached full copy of the fairness

22   opinion.  And even under discredited Delaware law, when you

23   attach a full copy of the fairness opinion, all this other

24   falls by the wayside.  It doesn't make any sense to require

25   further details if you've got the whole opinion in there,

1   which we do, it's in the proxy.

2        There again, there is an absolute lack of any evidence

3   showing that a reasonable investor would consider that

4   information important in deciding how to vote.  And maybe I'm

5   just not a math guy, but it just looks like more gobbledygook

6   to me.  You've got 11 pages of disclosures of what these

7   investment bankers' analysis was, and there's just untethered

8   with any requirement of having to disclose that information.

9   And tell me more claims like this are routinely rejected, even

10  in Delaware.

11       In the Trulio case I just handed to you, the Court

12  concluded that similar investment banker calculations were not

13  material or even helpful.  And the Court was very critical and

14  said, you know, you can always come up with some number that

15  wasn't included, but it also talks about what's been going on

16  in Delaware.  And you'll see why I think that's a very good

17  case to illustrate to Your Honor why the path that Delaware

18  embarked on about 20 years ago, is being reeled back in.  They

19  have created quite a mess up there, and part of it is the

20  standard that they have applied.  So I think relying on

21  Delaware law in this area is hazardous.

22       Now, the other thing they complain about is not enough

23  detail about the background regarding the merger.  And they

24  point to -- they've narrowed it to we want to know more

25  information about one of the losers.  You know, we dealt with

1  a lot of other bidders.  First of all, there's a robust

2  process described in detail in pages 31 through 33 of the

3  proxy.

4      Even in the plaintiffs' recitation of the process, there's

5  no dispute that Southcoast entered into the agreement with the

6  proposal that provided the highest value for Southcoast

7  shareholders.  They don't allege anything in the recitation of

8  the background is false, they don't allege anything is

9  misleading, or that anything said -- they just want more

10  details.  They would be more confirming details.  In our

11  respect, it would lead to confusion, it would be speculative,

12  and things that are confusing and speculative are unreliable

13  and have no place in a proxy.  That's why you don't include

14  future projections that are unreliable.  That's why you don't

15  include things like, well, what about one of the losers.

16      Now, and there are several things about that transaction.

17  One, it's speculative about whether or not they could ever

18  have reached an agreement.  This was a bidding process, but

19  that's just the beginning.  You take the best bid, you still

20  have to negotiate this merger agreement, and you'll see, there

21  are a lot of details.  Termination provisions, there are

22  management issues, there are a whole host of things that have

23  to be agreed upon.  You have a due diligence process.  So they

24  could have fallen apart.  And whether it's still available now

25  is completely speculative.  And most folks would go along in a

1    different path and commit, and that would be no longer

2    available alternative.

3        So a proxy is not a multiple choice exam.  It is -- the

4    board is vested with the discretion and authority to decide,

5    in the first instance, whether to enter into an agreement and

6    recommend its approval to the shareholder.  They have done

7    that.  They have fulfilled their duties.  There's no Revlon

8    duty here anyway under that case law, because there's a

9    continuing public corporation of public shareholders.

10       But in any event, there's no argument, there's no claim

11   here, based on their process that they went through, or a

12   price claim, as plaintiff has acknowledged.  They only want

13   more information disclosed about that process.  I submit there

14   is no requirement that they have pointed to that it be

15   disclosed.  What has been disclosed is not false or

16   misleading.

17       And as the case law points out, you certainly aren't

18   required to disclose every bend in the road which led to the

19   result that you reach.

20       And, you know, there are other issues, too.  When you have

21   a cash transaction, you're talking about tax consequences,

22   you've got a whole host of things that you'd have -- you can't

23   just talk about a deal a little bit.  And everything about how

24   it would have transpired is speculative.  And that's simply

25   inappropriate for a proxy.

1          Now, let me talk about the next factor would be the

2     plaintiff will not be harmed.  And here, I think, you know,

3     part of the fact that they don't perceive any real harm here

4     is that they waited until the eve of this vote.  I think that

5     demonstrates a lack of perceived irreparable harm.  And the

6     case law reflects that.

7          And he is seeking an extraordinary remedy, and damages are

8     an adequate remedy here.  He completely dodges that issue,

9     completely ignores it in his brief.  But Rule 14(a)(9) gives

10    you a remedy for damages.  If you violate the statutory

11    disclosure requirements under 14(a)(9), you can sue for

12    damages.  And that fact alone is fatal to plaintiff's claim

13    for injunctive relief.

14         Plaintiff has also, I guess, has acknowledged there's no

15    offer that is better that's on the table.  Mr. Pearson's

16    affidavit states that no other bidder has come forward since

17    the deal.  So it's not like the irreparable harm of leaving a

18    better deal on the table before you vote on this one.  That is

19    simply not the fact.

20         Now, Your Honor, let me talk about the risk of harm to

21    Southcoast.  And until we got the reply brief, we didn't know

22    he would ask for a one-week delay, and now he's suggesting no

23    delay.  And let me just say this.  I think that demonstrates

24    how serious he thinks his claims are, to throw a press release

25    out there and a filing with the SEC on the eve of this vote,

1    and say, that's good enough.  At least that gives him a

2    platform to ask for a fee.  But if a serious securities lawyer

3    thought there was really something wrong with a proxy, that's

4    not how it would be handled.  Let me just leave it at that.

5        There will be an adverse market reaction if this is

6    enjoined.  There will be negative publicity.  There will be

7    confusion in the hundreds -- in the minds of hundreds of

8    Southcoast shareholders who think they've already voted for

9    this; now what do I do?  I've got to do it again.  People who

10   would show up for this meeting that doesn't take place.  Now

11   what do they do; they have to reschedule it.  Who's going to

12   get notice, realistically, if you do something like that.

13   There's all sorts of public confusion.

14       And there are also the lives of employees involved.

15   Employees need to know, is this transaction going to go

16   forward.  Who's going to have a job, you know, how is this

17   going to play out.  There is some chance of losing this

18   opportunity, if this is delayed.  There is obviously market

19   volatility out there.  And no telling what delay will lead to.

20   The markets are gyrating.  There may be things that happen

21   between now and the interim that endanger this transaction.

22   And at the time, it was negotiated as a 42 percent premium

23   that was negotiated, which is significant and recognized in

24   the case law as significant.  And even the Delaware courts

25   have said they're loathe to play with other people's money,

1    especially when there's not another bid out there.  You

2    shouldn't be enjoining votes, especially from what I would

3    submit are trivial additional confirming details that are the

4    subject of plaintiffs' motion.

5        And we do submit, and it is going to depend on the extent

6    of any delay and all of that, but we do contend that it would

7    be certainly disruptive, and we think it could be expensive.

8    And so a substantial bond should be required, if it is

9    delayed, Your Honor.

10        If you have any further questions, I'll be glad to answer

11    them.

12            THE COURT:  Nope.  Thanks.

13        Yes, sir, Mr. Long.  I'm sorry.

14            MR. MAST:  That's all right.

15        Your Honor, Tim Mast from Troutman Sanders for BNC.  I'll

16    be brief.  Mr. Knowlton has made clear, and I think the Court

17    is well aware that the remedy that the plaintiff is seeking

18    here is extraordinary, and should only be granted sparingly

19    and in very limited circumstances.

20        Mr. Knowlton has also made clear that the plaintiff has

21    not met his burden of making a clear showing on any element of

22    those requirements.  The plaintiffs' motion, as is clear,

23    relates only to the disclosure claims related to the

24    Southcoast board.  Many of those disclosure claims are not

25    even alleged in the operative complaint, but are included in

1    the proposed second amended complaint, which hasn't been

2    allowed yet.  And on any of those disclosure claims, in either

3    of the two complaints, the plaintiff has not made a clear

4    showing of likelihood of success on the merits.

5        The plaintiff has also not clearly shown that he is

6    entitled to suffer irreparable harm here.  He clearly has all

7    the material facts he needs to decide how to vote, and if he

8    thinks the 42 percent premium that he's going to get is too

9    low, he has an adequate remedy at law; money damages.

10        Although the plaintiff has implied in his papers that

11    there must be irreparable harm here, because this is a

12    disclosure case, the law is clear that irreparable harm is not

13    automatic.  Courts often deny injunctive relief on disclosure

14    claims due to a lack of irreparable harm.  We cited several

15    cases in our brief about that, and including Money Group and

16    Davis versus Duncan Energy.

17        I think it's noteworthy, Your Honor, that in Davis, the

18    Court specifically held, and Mr. Knowlton alluded to this,

19    that given that there is no rival offer in this case, and

20    there's not here either, there is no per se threat of

21    irreparable harm.  The Court is not persuaded that plaintiffs

22    will not have an adequate remedy at law, even if the purported

23    transaction is approved at a price they later prove to be

24    inadequate.  The same is true here.

25        The plaintiff has also not clearly shown that the balance

1    of the equities tip in his favor, or that an injunction is in

2    the public interest.

3        I'm not going to belabor these points any further.  And

4    given that the plaintiff is not pursuing his claims related to

5    the projections, I just want to focus on one of the disclosure

6    claims, which is this issue about Banks Street's unrelated

7    work for BNC.

8        In his reply brief that they filed last night, the

9    plaintiff stated, and I quote, that "Banks Street has

10   performed substantial work for BNC in the past two years, and

11   as recently as November 15th -- as November 2015, but no

12   details with respect to Banks Street's significant

13   relationship with BNC are currently disclosed."  And that's

14   simply not true.  The definitive proxy explicitly informs

15   Southcoast shareholders that Banks Street has done other work

16   for BNC in the last two years, and that it has been paid for

17   that work.

18       In addition, in an effort to demonstrate that material

19   information has not been disclosed, the plaintiff attached

20   three different press releases to his motion, related to other

21   transactions in which BNC has used Banks Street as its

22   financial adviser.  He points to the Valley Financial

23   transaction, which was announced in July of 2015, the Service

24   Bank transaction, which was announced in October, and the High

25   Point Bank transaction which was announced just in November of

 1   2015.  However, each one of those specific press releases,

 2   every single one of them is, in fact, part of the definitive

 3   proxy.  Banks Street, as Mr. Knowlton alluded to, announced

 4   each one of those transactions, and announced the fact that

 5   Banks Street was its financial adviser in AKs, as each one of

 6   those announcements was publicly disclosed, and each one of

 7   those AKs, every single one of them, was expressly

 8   incorporated by reference on page 80 of the proxy.

 9       So the facts that the plaintiff contends are missing are

10   actually disclosed.  The details about those transactions and

11   Banks Street's relationship with BNC are also disclosed.

12       Regardless of those facts, the Delaware cases that the

13   plaintiff claims mandate disclosure of the additional details,

14   including the compensation that Banks Street received in these

15   transactions, actually made clear that the additional

16   disclosure's not required here.

17       In the Simonetti case, which plaintiff relies on, the

18   Delaware Chancery Court held that where the proxy statement

19   already disclosed that the investment bank had done work for

20   both parties to the transaction, no additional disclosures

21   were necessary.

22       The Court held that the same investment bank had

23   represented parties with opposed interests in the merger, and

24   temporal proximity, and because that was disclosed, no further

25   disclosures on this point would have altered the total mix of

1    information available to shareholders.

2        So, simply put, Your Honor, the facts are disclosed.  And

3    to the extent the plaintiff indicates that he needs additional

4    disclosures related to that relationship, the cases he relies

5    on make clear that no additional disclosure's required here.

6        And on that basis, we believe that the plaintiffs' motion

7    for preliminary injunction should be denied.

8            THE COURT:  Great.  Thank you, Mr. Mast.

9            MR. MAST:  Thank you.

10            THE COURT:  Yes, sir, Mr. Long, anything?

11            MR. LONG:  Just a few brief comments to close.

12            THE COURT:  Yes, sir.

13            MR. LONG:  With respect to the plaintiff and his

14    ownership interest, defendants concede he has standing to

15    bring this claim; he's brought it as a class action.

16        Especially with respect to the banker disclosure,

17    especially with respect to the fact that, as defense

18    submissions reflect, the fact that BNC's paid Banks Street

19    eight times more than what Southcoast has paid, we don't

20    believe that, in and of itself, is material.

21        The Simonetti case the counsel's just referenced, there

22    was a more detailed disclosure about the relationship between

23    the banker and the buyer in that case.  Here, again, there's

24    just a sentence that says they provided services.

25        With respect to the bond issue, some of the cases we rely

 1   on where the Court has entered an injunction such as the one

 2   we're seeking, and ordered a brief adjournment, the Art

 3   Technologies case, no bond.  That was a ten-day adjournment.

 4   And then the Simonetti case, that was a 15-day adjournment,

 5   $10,000 bond.  So to the extent the Court wants to impose a

 6   bond, we point to those cases as precedent.

 7        Otherwise, unless Your Honor has any questions.

 8            THE COURT:  Fine, thank you.

 9        Anything else, Mr. Knowlton, Mr. Mast?

10            MR. KNOWLTON:  Not from me, Your Honor.

11            MR. MAST:  No, Your Honor.

12            THE COURT:  Okay.  We'll take a short recess and I'll

13   be back in a second.  Not to say I'm going to decide it in a

14   second.  I'm going to tell you what I'm going to do, all

15   right?  Thank you.

16        (A recess was held at this time.)

17            THE COURT:  Okay.  Because of the urgent nature of

18   the decision, I'm not going -- obviously not going to order --

19   give you a written decision with regard to the case, I'll give

20   you an oral decision, and I'll reserve the right to follow it

21   up with a written decision doing an analysis.

22        So I'm going to deny your motion for preliminary

23   injunction and TRO.  I don't believe the plaintiff has made a

24   clear showing that he's entitled to the relief, and that he's

25   failed to show a clear showing that he was either likely to

1  succeed on the merits, likely to suffer irreparable harm, and

2  the balance of equities tips in his favor, and that the

3  injunction is in the public interest.  On at least one, maybe

4  two of those elements, but I'll tell you what the elements are

5  when I do the written order.  But y'all need to know where you

6  stand.  So I'm letting you know where you stand, all right?

7       So, anything else from the plaintiff?

8            MR. LONG:  Nothing, Your Honor, thank you.

9            THE COURT:  Defendants?

10           MR. KNOWLTON:  No, Your Honor, thank you.

11           THE COURT:  Thank you all very much for your

12  arguments.  I appreciated it.  Very well argued.  And it was a

13  lot shorter than I thought it was going to be.  Brevity is the

14  soul of wit.

15

16       (Court adjourned at 2:47 p.m.)

17

18

19

20

21

22

23

24

25

1                    REPORTER'S CERTIFICATION

2

3          I, Debra L. Potocki, RMR, RDR, CRR, Official Court

4    Reporter for the United States District Court for the District

5    of South Carolina, hereby certify that the foregoing is a true

6    and correct transcript of the stenographically recorded above

7    proceedings.

8

9

10

     S/Debra L. Potocki
11    _____

12   Debra L. Potocki, RMR, RDR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25